Docket: 8/26/2026 12:23 PM; Submission: 8/26/2026 12:2
Envelope: 2789

# IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

Civil Division

NICHOLAS Z. HEARD
3026 New Oak Lane
Bowie, Maryland 20716

Plaintiff,

vs.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
300 Seventh Street, S.W.
Washington, D.C. 20024

And

CHAQUITA D. COLEMAN
1405 Dixie Bowie Way
Upper Marlboro, Maryland 20774

Defendants.

Civil Action No: C-16-CV-26-005059

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Nicholas Z. Heard, by and through undersigned counsel, Ryan Hussey and Morgan & Morgan DC, PLLC, brings this action against Defendants Washington Metropolitan Area Transit Authority and Chaquita D. Coleman and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Nicholas Z. Heard ("Plaintiff") is an adult individual residing in Bowie, Maryland.
2. Defendant Chaquita D. Coleman ("Defendant Coleman") is an adult individual residing at 1405 Dixie Bowie Way, Upper Marlboro, Maryland 20774.
3. Defendant Washington Metropolitan Area Transit Authority ("WMATA") is a governmental entity organized and existing pursuant to interstate compact and authorized

to operate public transportation services within Maryland, Virginia, and the District of Columbia.

4. At all times relevant to this action, Defendant Coleman was operating a WMATA-owned transit bus and was acting as an employee, agent, servant, and/or representative of WMATA within the course and scope of that relationship.
5. This action arises from a motor vehicle collision that occurred on October 19, 2025, on Lottsford Road in Prince George's County, Maryland.
6. Venue is proper in this Court because the collision and the acts and omissions giving rise to Plaintiff's claims occurred in Prince George's County, Maryland.

**FACTUAL ALLEGATIONS**

7. On October 19, 2025, Plaintiff was lawfully operating a 2022 Tesla Model 3 in Prince George's County, Maryland.
8. At the same time and place, Defendant Coleman was operating WMATA bus registration number B52547, a 2023 New Flyer Xcelsior transit bus owned by WMATA.
9. The collision occurred on Lottsford Road in Prince George's County, Maryland.
10. Prince George's County Police responded to the scene and generated Police Report PP251019000017.
11. The police report identified WMATA as owner of the bus and Defendant Coleman as the operator.
12. Defendant Coleman owed Plaintiff and other motorists a duty to operate the WMATA bus with reasonable care and in compliance with applicable traffic laws and roadway safety requirements.
13. While operating the WMATA bus, Defendant Coleman negligently drove and maneuvered

the bus so as to cause contact with Plaintiff's vehicle while Plaintiff was lawfully occupying his lane of travel.

14. The impact occurred on the driver's side of Plaintiff's vehicle and forced Plaintiff's vehicle toward the curb and sidewalk area.
15. Plaintiff's body and head were violently jolted as a result of the impact.
16. Following the collision, Plaintiff developed headaches, neck pain, shoulder pain, upper back pain, stiffness, sleep disturbance, and related symptoms.
17. On October 20, 2025, Plaintiff presented to Anne Arundel Medical Center Emergency Department for evaluation and treatment following the collision.
18. Plaintiff reported headaches, neck pain, shoulder pain, upper back pain, stiffness, and difficulty sleeping after being struck by the WMATA bus.
19. Plaintiff was diagnosed with motor vehicle collision injuries and trapezius strain and was prescribed Ibuprofen and Methocarbamol.
20. Plaintiff thereafter sought continuing treatment through Maryland Healthcare Clinics.
21. Providers documented complaints of post-traumatic headaches, dizziness, concentration difficulties, stress-related symptoms, sleep disturbance, neck pain, thoracic pain, lumbar pain, and right shoulder pain.
22. Physical examination documented cervical tenderness, cervical muscle spasm, thoracic tenderness, lumbar tenderness, right shoulder tenderness, restricted range of motion, and positive orthopedic findings.
23. Plaintiff was diagnosed with post-traumatic headaches, dizziness, stress disorder, cervical sprain/strain, thoracic sprain/strain, lumbar sprain/strain, and right shoulder ligamentous injury.

24. Plaintiff's treating providers concluded that his injuries were causally related to the October 19, 2025 collision.

25. As a result of his collision-related injuries, Plaintiff was removed from work from October 24, 2025 through November 7, 2025 and again from November 17, 2025 through November 24, 2025 by his treating providers.

26. Plaintiff underwent orthopedic evaluation and treatment with Adam Albaba, M.D.

27. Dr. Albaba diagnosed cervical spine sprain/strain with trapezius muscle spasm, right shoulder strain, and thoracolumbar sprain/strain and related those conditions to the subject collision.

28. Plaintiff also underwent neurological evaluation for post-traumatic headaches, dizziness, insomnia, balance complaints, and anxiety resulting from the collision.

29. Plaintiff underwent extensive physical therapy and rehabilitation following the collision.

30. During treatment, Plaintiff consistently reported cervical pain, right shoulder pain, headaches, stiffness, muscle tightness, and difficulty performing routine activities.

31. Physical therapy records documented reduced cervical range of motion, right upper extremity weakness, tenderness throughout the cervical and trapezial musculature, positive bilateral Spurling's testing, and ongoing functional deficits.

32. Plaintiff's symptoms interfered with activities including driving, holding a steering wheel for extended periods, carrying objects, lifting, reaching overhead, reaching below waist level, performing household chores, and sleeping comfortably.

33. Plaintiff underwent pain management treatment after failing to achieve complete relief through conservative care.

34. Pain-management providers diagnosed acute whiplash injury, cervicalgia, and cervical radiculopathy.

35. Plaintiff continued to experience neck pain radiating into his shoulder, numbness, paresthesias, reduced range of motion, and ongoing functional limitations despite treatment.

36. Because Plaintiff failed to improve through conservative treatment, advanced diagnostic imaging was ordered.

37. MRI imaging of Plaintiff's cervical spine performed on February 4, 2026 revealed diffuse posterior disc bulges at C5-C6 and C6-C7.

38. Plaintiff also developed significant emotional and psychological symptoms following the collision, including post-traumatic stress symptomology, anxiety, depression symptoms, fatigue, sleep disturbance, and emotional distress.

39. Behavioral-health assessments documented clinically significant post-traumatic stress symptomology and elevated anxiety and depression symptoms.

40. During rehabilitation, Plaintiff experienced a panic attack that interrupted treatment and prevented completion of portions of his evaluation and therapy. Treating providers documented management of panic attack symptoms during care.

41. Plaintiff has incurred medical expenses and has experienced physical pain and suffering, emotional distress, mental anguish, inconvenience, impairment of normal functioning, lost wages, and loss of enjoyment of life as a result of the collision.

42. As a direct and proximate result of Defendants' negligence, Plaintiff sustained cervical sprain/strain, cervical radiculopathy, acute whiplash injury, posterior disc bulges at C5-C6 and C6-C7, thoracic sprain/strain, lumbar sprain/strain, right shoulder

strain and ligamentous injury, post-traumatic headaches, dizziness, sleep disturbance, concentration difficulties, anxiety, depression symptoms, post-traumatic stress symptomology, emotional distress, and related bodily injuries.

43. Plaintiff's injuries and damages were directly and proximately caused by Defendants' acts and omissions and were not caused or contributed to by any negligence on the part of Plaintiff.

44. Plaintiff's injuries are serious and some or all may be permanent in nature, the full extent of which remains under evaluation.

**COUNT I - NEGLIGENCE**
**CHAQUITA D. COLEMAN**

45. Plaintiff incorporates the preceding paragraphs as though fully set forth herein by reference.

46. Defendant Coleman owed Plaintiff a duty to operate the WMATA bus in a reasonably prudent and careful manner under the circumstances.

47. Defendant Coleman breached the duties owed to Plaintiff by, among other things:

    a. Failing to maintain a proper lookout;
    b. Failing to maintain proper control of the WMATA bus
    c. Failing to maintain her lane of travel;
    d. Failing to maintain adequate and safe clearance from Plaintiff's vehicle;
    e. Improperly changing lanes and/or moving laterally into Plaintiff's lane of travel;
    f. Failing to ensure that the bus could be operated safely before maneuvering;
    g. Causing contact between the WMATA bus and Plaintiff's vehicle;

h. Failing to exercise reasonable care under the existing roadway and traffic conditions;

i. Failing to take reasonable and timely action to avoid the collision;

j. Operating the WMATA bus in a careless and negligent manner; and

k. Otherwise failing to exercise the care that a reasonably prudent commercial bus operator would exercise under the same or similar circumstances.

48. Defendant Coleman's negligence directly and proximately caused the October 19, 2025

49. collision.

50. As a direct and proximate result of Defendant Coleman's negligence, Plaintiff sustained the injuries and damages described herein.

**COUNT II - VICARIOUS LIABILITY / RESPONDEAT SUPERIOR WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**

51. Plaintiff incorporates the preceding paragraphs as though fully set forth herein by reference.

52. At the time of the collision, Defendant Coleman was an employee, agent, servant, and/or authorized operator acting for and on behalf of WMATA.

53. At the time Defendant Coleman committed the negligent acts and omissions described herein, she was acting within the course and scope of her employment, agency, service, and/or business relationship with WMATA and in furtherance of WMATA's business.

54. Accordingly, WMATA is vicariously liable for the negligent acts and omissions of Defendant Coleman under the doctrine of respondeat superior and applicable principles of agency law.

55. Defendant Coleman's negligence, for which WMATA is vicariously liable, directly and proximately caused Plaintiff's injuries and damages.

56. As a direct and proximate result, Plaintiff has sustained bodily injuries, physical pain and suffering, emotional distress, mental anguish, inconvenience, impairment of normal activities, loss of enjoyment of life, medical expenses, lost wages, and other compensable damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nicholas Z. Heard demands judgment against Defendants Washington Metropolitan Area Transit Authority and Chaquita D. Coleman, jointly and severally to the extent permitted by law, for compensatory damages in an amount exceeding $75,000, including damages for bodily injuries, pain and suffering, emotional distress, mental anguish, medical expenses, lost wages, impairment of normal activities, loss of enjoyment of life, and all other compensable damages recoverable under Maryland law, together with pre-judgment and post-judgment interest as permitted by law, allowable costs, and such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**Respectfully submitted,**

*/s/ Ryan Hussey*
Ryan Hussey
Morgan & Morgan
20 M St SE, 6th Floor,
Washington, DC 20003
(202) 772-0558
Attorney Bar Number: 2406131001
Ryan.hussey@forthepeople.com

*Attorney for Plaintiff*

**CERTIFICATE AS REQUIRED BY MARYLAND RULE 20-201**

I hereby certify that the foregoing does not contain any restricted information. I file this in accordance with Md. Rule 20-201(h).

**CERTIFICATION UNDER MARYLAND RULE 1-313**

I hereby certify that I am admitted to practice law in the State of Maryland but do not maintain an office for the practice of law in this State.

**Respectfully Submitted,**

/s/ Ryan Hussey
Ryan Hussey